**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ISMAIL FAILALI, et al., | ) | CASE NO. 5:22-cv-2038 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| EAST COAST PERFORMANCE LLC, | ) | AND ORDER |
| d/b/a E.C.P. Auto Repair & Service, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiffs Ismail Failali ("Failali") and Soukaina Moussa ("Moussa") (together, "plaintiffs"), pursuant to Fed. R. Civ. P. 55(b)(2), for default judgment in this action to redress certain violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"), specifically a breach of fiduciary duty committed by defendant East Coast Performance LLC ("defendant" or "E.C.P.") in regard to a health insurance plan. (Doc. No. 7 (Motion), as supplemented by Doc. No. 10 (Notice of Filing Proof of Damages); *see also* Doc. No. 1 (Complaint) ¶ 1.) The motion is unopposed. For the reasons that follow, default judgment is granted in favor of plaintiffs and against defendant on the complaint, and plaintiffs are awarded a total amount of $12,731.91.

**I.      Procedural Background**

On November 11, 2022, plaintiffs filed their complaint against E.C.P. (*See* Doc. No. 1.) Service of process was executed by the Clerk upon E.C.P. by certified mail on January 23, 2023. (Doc. No. 4 (Return of Service).) When E.C.P. failed to move or otherwise plead in response to

the complaint, plaintiffs applied to the Clerk for entry of default under Fed. R. Civ. P. 55(a). (Doc. No. 5 (Application for Entry of Default).) On February 27, 2023, the Clerk entered default against E.C.P. (Doc. No. 6 (Entry of Default)), and a copy of the entry was mailed to E.C.P. on March 1, 2023, as noted on the docket. E.C.P. never responded in any way and has not sought to set aside the default. Therefore, plaintiffs' motion for default judgment is ripe for decision.

**II.     Standard of Review**

Federal Rule of Civil Procedure 55 governs default and default judgment. Once default is entered, as here, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) ("Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the [c]omplaint as true" (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007))); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006).

Under Rule 55(b)(2), the Court need not hold a hearing prior to entering default judgment, but may do so if the Court needs to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. In this case, the Court has examined the record before it, as well as plaintiffs' submissions in support of their motion for default judgment, and concludes that a hearing is not necessary to rule upon the motion.

The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC*, 976 F. Supp. 2d at 929 (citing, among authority, 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (3d ed. 1998) ("This element of discretion makes it clear that the

party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).")). Thus, E.C.P.'s default does not automatically entitle plaintiffs to relief.

In order to rule upon plaintiffs' motion, the Court must determine whether the factual allegations in the complaint (deemed admitted by E.C.P.'s default), and reasonable inferences derived therefrom, are sufficient to satisfy the elements of plaintiffs' legal claims for which they seek default judgment. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (finding that even though defendant has defaulted the court must determine whether factual allegations accepted as true state a claim for relief with respect to the claims for which plaintiffs seek default (citation omitted)); *see also Kwik–Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) ("[A] court may not enter default judgment upon a legally insufficient claim." (citations omitted)). Legal conclusions in the complaint are not deemed admitted by a defendant's default.

In addition, "[a]n entry of default judgment requires some affirmation that the person against whom the default judgment is obtained is not (1) 'an infant or incompetent person' who is unrepresented; (2) a member of the armed services who is entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et seq.*; or (3) an officer or agency of the United States." *Leach v. Lifeway for Youth, Inc.*, No. 1:07-cv-200, 2008 WL 1990390, at *1 (S.D. Ohio May 1, 2008) (citing Fed. R. Civ. P. 55(b), (c), (e); Advisory Committee Notes to Fed. R. Civ. P. 55, Supplementary Note.). As an Ohio limited liability company, E.C.P. is not a minor, incompetent person, or subject to the Soldiers' and Sailors' Relief Act of 1940. *See Zinganything, LLC,* 2016 WL 362359, at *2 (citing *Hitachi Med.*

*Sys. Am., Inc. v. Lubbock Open MRI, Inc.*, No. 5:09-cv-847, 2010 WL 4638057, at *1 (N.D. Ohio Nov. 5, 2010) ("As corporations, the [d]efaulting [d]efendants are clearly not infants or incompetent persons.")).

### III. Discussion

As already noted, by defaulting E.C.P. is deemed to have admitted all of plaintiffs' well-pleaded factual allegations as to liability. To be well-pleaded, the complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See Reid v. Herrera Harvesting LLC*, No. 2:17-cv-229, 2020 WL 2473491, at *1 (E.D. Tenn. May 13, 2020) (applying Fed. R. Civ. P. 8(a) to a complaint for which plaintiff seeks default judgment) (quotation marks and citations omitted).

#### A. Liability with Respect to the Allegations of the Complaint

In their complaint, plaintiffs allege that E.C.P. is an Ohio limited liability company with its principal place of business in Cuyahoga Falls, Ohio. (Doc. No. 1 ¶ 2.) Failali was employed by E.C.P. from 2019 until May 2, 2022. (*Id*. ¶ 3.)

E.C.P. maintained an "employee welfare benefit plan" ("the Plan"), was the "fiduciary" for the Plan, and was a "sponsor" of the Plan, each as defined in 29 U.S.C. §§ 1002(1), (21), & (16)(B), respectively. (*Id*. ¶¶ 1, 3.) As the fiduciary of the Plan, E.C.P. completed and processed participants' enrollments and terminations, deducted premium contributions from participants' wages, and informed participants and beneficiaries regarding Plan coverage and benefits. (*Id*. ¶ 4.)

At all relevant times, Failali was an "employee" and "participant" in the Plan and Moussa (Failali's wife) was a "beneficiary" of the Plan, each as defined by 29 U.S.C. §§ 1002(6), (7), & (8), respectively. (*Id*. ¶¶ 5, 6, 9.) Failali resigned his position with E.C.P. on May 2, 2022, with the

understanding (based on a text message from one of E.C.P.'s owners, John Cooper ("Cooper")) that Failali's health insurance coverage would remain in effect until May 31, 2022. (*Id*. ¶¶ 10, 11 (including copy of text message).) Because of his reliance on this representation by Cooper on behalf of E.C.P., Failali did not obtain alternative health insurance coverage for May 2022. (*Id*. ¶ 12.)

On May 22, 2022, Moussa received emergency medical treatment at Akron General Hospital and was billed for the services in the amount of $9,567.41. (*Id*. ¶ 13.) Through the process of being billed for those services, plaintiffs learned that E.C.P. had terminated their health insurance coverage under the Plan on May 8, 2022 (*id*. ¶ 14), notwithstanding Cooper's representation that the insurance would remain in effect until May 31, 2022. Because the health insurer would not pay the bill, Failali repeatedly attempted to contact E.C.P. and, on October 3, 2022, sent a letter to E.C.P. requesting payment of the medical bill. (*Id*. ¶¶ 15–17.) As of the date of the filing of the complaint (for which plaintiffs had to hire counsel) no response to this letter had been received by plaintiffs. (*Id*. ¶ 18.)

Plaintiffs claim that E.C.P. violated its fiduciary duty under 29 U.S.C. § 1104(a)(1) to be "accurate and truthful with respect to disclosures to [p]laintiffs about the Plan benefits, and to respond to [p]laintiffs' inquiries regarding Plan coverage and benefits with complete and accurate information." (*Id*. ¶ 22.) Plaintiffs claim that E.C.P. failed in this regard and caused injury to plaintiffs for which they are entitled to relief. (*Id*. ¶¶ 23–24.)

ERISA "establish[es] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and . . . provid[es] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Section 1104(a)(1) of Title 29 imposes a fiduciary

duty of accuracy and truthfulness on ERISA plan fiduciaries with respect to disclosures about benefits made to plan participants. *See Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018). An employer violates this duty when it "fail[s] to 'give complete and accurate information in response to participants' questions . . . ." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 550 (6th Cir. 1999) (quoting *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (stating that "[m]isleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty." (internal quotation marks and citation omitted))). A violation of the fiduciary duty of accuracy and truthfulness gives the participant and the beneficiary the right to sue to recover benefits and to enforce their rights under the plan, as well as to seek reasonable attorney's fees and court costs. 29 U.S.C. § 1132(a)(1)(B) & (g)(1).

Taking as true the undisputed factual allegations in the complaint, the law entitles plaintiffs to a judgment of liability against defendant East Coast Performance LLC on plaintiffs' claim under ERISA that defendant breached its fiduciary duty to plaintiffs.

**B.     Relief**

Having obtained a determination of defendant's liability on the claim for breach of fiduciary duty, plaintiffs further seek relief in the form of monetary damages reflecting the actual harm suffered because of defendant's breach, court costs, and reasonable attorney's fees incurred by the need to file this lawsuit to enforce their rights under ERISA. The Court will address each in turn.

### 1. Damages

"ERISA does not provide a standard for establishing harm from breaches by ERISA fiduciaries." *Van Loo v. Cajun Operating Co.*, 703 F. App'x 388, 394 (6th Cir. 2017) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 443, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011)). But "[t]he Supreme Court has recognized . . . that harm includes detrimental reliance and the loss of a right protected by ERISA." *CIGNA Corp.*, 563 U.S. at 444. Further, the Sixth Circuit has held that a participant or beneficiary under ERISA who has reasonably relied upon a misrepresentation by a fiduciary can recover for a resulting "'detriment . . . [that is] actual and substantial[.]'" *Van Loo*, 703 F. App'x at 394 (quoting *Deschamps v. Bridgestone Ams., Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 276 (6th Cir. 2016)). Detrimental reliance "may be proved by loss of opportunity to improve one's position." *Id.* (noting that "one who believes she has coverage does not go out to acquire the same coverage again[]").

While plaintiffs' well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, the same is not true for damages. *Ford Motor Co.*, 441 F. Supp. 2d at 848 (citations omitted); *Nat'l Satellite Sports, Inc. v. Mosley Ent., Inc.*, No. 01-cv-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2022) (noting that "the allegations of the complaint regarding the amount of damages suffered are not controlling[]") (citations omitted). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Loc. Union 82 v. Union Lighting Prot.*, No. 3:11-cv-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enterpr.*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Here plaintiffs submitted proof of the bill from Akron General Hospital in the amount of $9,567.41 that they seek to recover from E.C.P. (Doc. No. 10-1.) Plaintiffs claim they would not have incurred this bill for services on May 22, 2022, if E.C.P. had either continued their health insurance coverage until May 31, 2022, as promised by Cooper's text message, or had told plaintiffs that they would need to find their own coverage effective May 8, 2022, following Failali's resignation from his employment with E.C.P. on May 2, 2022.

Plaintiffs have established that they are entitled to recover from E.C.P. the amount of $9,567.41 and the same shall be ordered.

**2.     Attorney's Fees and Costs**

Under 29 U.S.C. § 1132(g), plaintiffs are entitled, in this Court's discretion, to recover "a reasonable attorney's fee and costs of the action[.]"

In this case, it is undisputed that plaintiffs relied to their detriment upon a misrepresentation made by the fiduciary and sponsor of the Plan—E.C.P. It is also undisputed that plaintiffs' efforts to avoid a lawsuit by first asking E.C.P. to rectify the situation by paying the bill were unsuccessful. Therefore, the Court determines, in its discretion, that plaintiffs are entitled to recover attorney's fees and court costs.

To that end, plaintiffs have submitted their counsel's fee statement (Doc. No. 7-1 (Exhibit A, Fee Statement)) as well as counsel's affidavit attesting to his legal credentials and verifying his fee statement, as well as swearing to his unsuccessful pre-suit efforts to resolve this matter with E.C.P. (Doc. No. 7-2 (Affidavit of Matthew L. Aiden)). The Court has taken this evidence into consideration.

"[T]he starting point for determining what attorneys' fees are reasonable is a lodestar calculation—the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020) (internal quotation marks and citation omitted). There is a "strong presumption" that the prevailing lawyer is entitled to his lodestar fee. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citing cases).

When determining the number of reasonable hours, itemized billing records are sufficient when they "specify, for each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific task completed." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553–54 (6th Cir. 2008).

A reasonable fee is one that is likely to attract competent counsel without producing a windfall to an attorney. *Cmty. Refugee & Immigr. Servs. v. Registrar, Ohio Bureau of Motor Vehicles*, No. 2:18-cv-1189, 2020 WL 3545665, at *6 (S.D. Ohio June 30, 2020). To determine an appropriate hourly billing rate, courts look to the "prevailing market rate in the relevant community"—or "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record[.]" *Adcock-Ladd*, 227 F.3d at 350. "It is well-established that a district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Am. Broad. Cos. v. Brunner*, No. 1:04-cv-750, 2008 WL 11450441, at *10 (S.D. Ohio Sept. 30, 2008).

Here, counsel's itemized billing records meet the standard set forth in *Imwalle* and substantiate 8.50 hours of work between September 22, 2022 through March 31, 2023. The Court finds this number of hours reasonable under the circumstances.

In addition, counsel's affidavit reflects that he has practiced law for close to 30 years and is admitted to practice in several jurisdictions, including this one. (Doc. No. 7-2 ¶¶ 2–5.) The affidavit attests to a billing rate of $325.00 per hour, which counsel "regularly bill[s] and receive[s.]" (*Id.* ¶ 12.) In light of counsel's affidavit, as well as this Court's knowledge of the prevailing rates in this general locale, the Court finds this hourly rate to be reasonable. *See Hines v. DeWitt*, No. 2:13-cv-1058, 2016 WL 2342014, at *3 (S.D. Ohio May 4, 2016), *aff'd sum nom. Hines v. City of Columbus*, 676 F. App'x 546 (6th Cir. 2017) (finding that $350 was a reasonable rate for a civil rights attorney with more than 20 years of experience).

Finally, plaintiffs seek to recover as court costs the $402.00 they expended to file this case. There can be no dispute regarding the amount, as this "filing fee" is reflected on the clerk's docket entry for the complaint.

**IV. Conclusion**

For the foregoing reasons, plaintiffs' motion for default judgment on their complaint is GRANTED. Plaintiffs are AWARDED damages in the total amount of $12,731.91 (reflecting $9,567.41 for the Akron General Hospital medical bill; $2,762.50 for a reasonable attorney's fee; and $402.00 in court costs). This case is closed.

**IT IS SO ORDERED**.

Dated: September 1, 2023

                                      **HONORABLE SARA LIOI**
                                      **CHIEF JUDGE**
                                      **UNITED STATES DISTRICT COURT**